JUDGE GREEN.
An injunction was awarded to judgments upon Scire Facias to revive other judgments, upon the allegation that the debtor had paid the full amount of the executions upon the original judgments, to the Deputy Sheriff, in whose hands those executions were. To prove this allegation, the receipts of the Sheriff, dated April 25th, 1815, are produced. One of the executions was returnable to the fourth Monday in November, 1814; the other, to the fourth Monday in January, 1815. The defendant relies that the payment to the Sheriff was after the executions were returnable, and they not having been levied, the payment does not bind him, and was no satisfaction of the judgments; especially as the Sheriff has returned the executions, without any endorsement of what was done under them. The plaintiff has offered proof by parol, for the purpose of shewing, that notwithstanding the date of the receipts, the payments were made before their dates, and whilst the Sheriff was authorised to receive the money. It is not suggested that the executions were ever levied. This proof is extremely loose *and vague, both as to the fact, and date of the payments. The receipts are prima facie evidence, that the payments were made at the date of the receipts, and there is internal evidence in the transaction, that this was the truth of the case. The principal and interest, up to the date of the receipt, with costs and Sheriff’s commissions, amount to $208 67. The receipt is for *138 $208 58, a difference of nine cents; whereas, the principal and interest to the return day, with costs and Sheriff’s commission, amount only to $202 94; a difference of $5 64, a few cents more than the interest from the return day to the date of the receipt, with the Sheriff’s commission thereupon ; a clear proof that the payment, however made, was made when the Sheriff had no authority to receive the money; so that the debtor could have made no defence at law.
Both decrees should be reversed, the injunction dissolved, and the bill dismissed.
JUDGE COALTER.
On the first view of this .case, I would have been satisfied to have reversed the decree for the error assigned in relation to Rhoda Goodrich, a judgment in whose favour has been injoined when she was not before the Court. It is often proper to dissolve an injunction, and ev,en dismiss a bill, before all the parties interested are before the Court; as in cases where it is apparent that the plaintiff has made out no case as to any one, and has sought no discovery, and could have no decree, except for an injunction against those not before the Court. There is nothing to prevent the dismission of a bill in such a case. But, it does not follow that the party, whose bill may be dismissed because he has failed to shew his equity, shall have a decision in his favour upon that equity, against one who is not before the Court.
The question then is, whether the appellee has shewn sufficient grounds why his bill ought not at present to be dismissed?
*It is said he has not; first, because he has mads out no case which could have availed him as a defence at law, had every thing that now appears been made known to that Court; and between these parties, the equity being equal, the law must prevail. Secondly, it is said, that if this defence would have prevailed at law, there is no sufficient excuse why it was not made there; and therefore equity will not relieve.
As to the first. I am fully satisfied that whilst the executions were in the hands of the Deputy Sheriff, an arrangement was made with him, by which he was to receive the benefit of other executions then in force, in favor of the appellee, and who, in consequence thereof, had agreed not to proceed to levy the executions on the property of the appellee; and I am also satisfied, that he did receive the avails of those executions, either to the full amount of the executions against the appellee, or that the appellee, in some other way, paid up the balance, as he believed, in fuli discharge of those executions; and that the Deputy Sheriff is the party who really ought to pay the amount of the judgments sought to be injoined. Erom the delay in suing out the Scire Eacias in this case, I have also little doubt, but that the creditor or his representative had reason to believe, that the appellee was discharged, and that their recourse was against the Deputy Sheriff. No return has ever yet been made on the executions, although they are in the clerk’s office, the Deputy Sheriff having merely endorsed when they came to hand, but not what he did with them. It may be, that the creditor, having for several years endeavoured in vain to get the money from him, was better satisfied with no return, although he could have forced one, than with a return of the truth of the case; or it may be that Wallace is dead, and that the executions have been found among his papers, and returned by his executor or administrator to the clerk’s office. It may be too, that funds enough were placed in his hands by the appellee, when the execution was in full force, to discharge *the whole debt, and that he agreed to apply them and return the execution satisfied. All these things, I think, are highly probable; much more so, than to suppose that this receipt in 1815, was given when in reality the Deputy Sheriff had not received the full amount of the executions.
I think it highly probable too, that those funds may not have been instantly available to the Deputy Sheriff, though agreed to be received by him in discharge of the executions, or so far as they would go; and if not enough, that the balance was finally to be made up on a settlement: that such settlement took place in a short time after the return day, and most probably when the executions were yet in the hands of the Deputy Sheriff, and the receipts given; and that the Deputy Sheriff ought, in justice, to have returned the executions satisfied. All this might probably have appeared more fully, had the Deputy Sheriff been made a party to the suit, and had the appellee taken the trouble to develope more fully the nature of these transactions.
I was therefore, at first, disposed simply to reverse the decree, and send the cause back; for, had the executions been thus fully and legally discharged, though the Sheriff failed to return them satisfied, and did not give receipts for the money until after the return day, such payment before the return day, was a complete defence at law, and under the circumstances of this case, ought to be equally available in equity. On more full examination, however, the fact that the executions were calculated up to the date of the receipts, throws more doubt upon the subject, as to the time when these transactions took place, and as to the real nature of them when they did take place; and as the appellee has been indulged with a hearing in equity, after a failure to defend himself at law, he ought, and that promptly, to have made out a clear case there. He ought to have shewn clearly, that ' he could have availed himself of this defence at law, had it been made there; but, not having shewn this, with sufficient certainty, it is perhaps most proper no longer to delay the case for further explanations on his part, b'ut to dismiss the bill.
*Had he shewn such a case as would have been a clear defence at law, I am satisfied this Court ought to have relieved. My opinion on this subject, as supported I think by the great current of decisions in this Court, growing out of the peculiar situation of our country, and of our Judicial *139 •■systems, which renders it necessary for Courts of Equity to extend relief here where it might properly be refused in England, I have lately had occasion to express in the case of Oswald, Deniston & Co. v. Tyler, ante, p. 20. I still entertain the same opinions as there expressed. Here the party had fully and fairly paid off the executions whilst they were in full force, snd in the hands ot the Sheriff, (which is the postulatum in this view ox the case) and had obtained receipts a few months thereafter, the efficacy of which to protect him he had no doubt of; or, if we hold him bound to know the law, that these receipts, without further proof that the payment was made when the executions were in force, would not do, he would know also that he had such proof. The fact was, that he had paid the debts, and thought the receipts all sufficient. Some five or six years after, he is served with a Scire Facias, to shew cause why executions shall not again issue; no arrest; a simple notice to shew cause. This, as he alleges in his bill, he takes to be a notice of a motion about to be made against him at the next term. He employs counsel to defend him against such notice, and gives him the receipts. He also communes with his neighbour, the agent oi manager of this business, on the way. He tells him that he has such receipts; refers him to his attorney for an examination of them; is told by the agent that he had seen them, that they were in the hand-writing of Wallace, the Deputy Sheriff, and that he was satisfied. This conversation, he avers, threw him off his guard; and his mistake of the nature of the process also, threw the attorney off his guard; and so judgments were obtained at law.
The plaintiff, in the bill, avers on oath, that he did understand that the defendant was satisfied. How does the ‘answer deny or disprove this? It does not deny the conversation, and that he did admit that he had seen the receipt, and that he was satisfied they were in the hand-writing of Wallace. But, he denies that he told the complainant, after seeing the receipts, that he was satisfied; but, on the contrary, he was dissatisfied then, and is now, and will be so, until he receives the money; but, that he told the plaintiff so is not averred. As, however, he told him he was satisfied that the receipts were in the hand-writing of Wallace, he might well have supposed that was all that was necessary to satisfy him about. But, the defendant may well have been dissatisfied at not having received the money, and remain so until he does receive it; and this in fact is all he substantially says, and that in answer to a bill which calls upon him to answer “unevasively and particularly.” The truth is, that he did then believe it was a good defence. He says, “although from the first appearance of the papers, it would seem that if the proper defence had been made, the complainant ought to have been allowed the said receipts as offsets against the executions, yet upon a proper examination it will be found that he ought not; for, that they bear date after the return day, &c.” Had he given them this proper examination, and come to the conclusion above, at the time of this conversation? In charity, I think not; for it would have been a direct fraud to have answered in such a way in relation to them, as might have been construed into an admission that they were a defence. He ought to have said, “I have given these papers a proper examination, and, though I admit they are the handwriting of Wallace, they will not avail you. They are after the return day.” He would then have been told, “But, I will prove that these payments were before the return day.” There is a great immorality in any man who has once enforced the payment of his debt, to compel a second payment, merely because, from mistake or surprise, he has gotten a judgment at law for it. Such injustice is only tolerated by the Courts, not as justice between ‘man and man, but on the ground of policy in putting an end to controversies by one suit, when that can be done; as a punishment to the negligent, not as a premium to injustice; for injustice, abstractly speaking, it certainly is. The punishment is often greatly inadequate to the offence, and will not be imposed, when from fraud, accident or surprise, the defence has not been made at law. I think sufficient accident or surprise, if not fraud, exists in this case ; and had the party now shewn, as I think, in all probability, with proper diligence he might have shewn, that he had a defence at law, I would grant him relief. He has hitherto failed to do this; and I think I go far enough in saying, that this controversy ought not further to be protracted ; but that the bill, on this ground, ought to be dismissed.
Both decrees must be reversed, and the bill dismissed.*'

The President and Judge Cabell, absent.